E. E. DEITZ, *Trustee, v.* A. L. CRAIG *et al.*

(No. 8358)

Submitted October 28, 1936. Decided December 8, 1936.

*T. W. Ayres, Price, Smith & Spilman* and *Howard R. Klostermeyer,* for appellant.

*Emmett Horan, G. G. Duff, T. C. Townsend, E. S. Bock* and *Ben Moore,* for appellees.

MAXWELL, JUDGE:

This is a controversy between E. L. Morrison, receiver of Richwood Banking & Trust Company, and L. F. Chapman, respecting liquidating dividends on certain deposits which were carried in said bank when it went into receivership. From a decree in favor of Chapman, this appeal is prosecuted by Morrison, receiver.

The bank closed October 2, 1931, and E. L. Morrison was appointed receiver. A. L. Craig, president of the bank, was indebted thereto in the amount of several thousand dollars. Craig owned extensive property interests, principally real estate.

November 30, 1931, Craig and wife conveyed to L. F. Chapman, for $10.00 cash and "other good and valuable considerations", a tract of 300 acres of land belonging to Craig. The deed was absolute on its face. But there was a collateral agreement that the conveyance should be absolute only as to 50 acres, more or less, for which Chapman paid Craig $900.00; and that as to the residue of the acreage the conveyance was solely "for the purpose of securing the payment" to Chapman of the sum of $2912.00 loaned by him to Craig.

May 3, 1932, Craig and Chapman and wives conveyed to T. B. Oyler, with certain mineral exceptions and reservations, 63 acres of the above-mentioned 300-acre tract, in consideration of assignment to Craig by Oyler of the latter's claim against the bank and the receiver thereof for the sum of $2500.00 which Oyler had on deposit in the bank at the time it closed. Chapman agreed to this sale and joined in the conveyance to Oyler by reason of an arrangement between Chapman and Craig whereby Craig concurrently assigned to him the Oyler claim for $2500.00 against the bank as collateral for the loan aforesaid.

August 15, 1932, A. L. Craig, his wife joining, executed to E. E. Deitz, trustee, a general assignment of all of Craig's property, real and personal, for the benefit of his creditors. Deitz executed bond and took charge of the property.

November 1, 1932, Deitz, trustee, and Chapman and wife executed a deed conveying to Lucinda Bennett another portion of the 300-acre tract containing 89.6 acres in fee and 10 acres of mineral, in part consideration of $1140.00 cash, not herein involved, and in further consideration of said grantee's assignment to Deitz, trustee, of her claim against the bank and its receiver on account of two certificates of $1,000.00 each for money which she had on deposit in the bank at the time it closed. Coincidently with said transaction, Deitz, trustee, assigned the Bennett claim to Chapman as further collateral security to Chapman for the $2912.00 note which Craig had executed to him.

This suit was instituted by Deitz, trustee, in November, 1932, for the purpose of winding up the affairs of Craig's estate. A large number of persons, creditors of Craig, were made parties defendant to the bill, among them, Morrison, receiver, and Chapman. These two presented by answers their controversial matter. It arises from the fact that Morrison, receiver, is prepared to pay certain liquidation dividends on the Oyler deposit of $2500.00 and the Lucinda Bennett deposit of $2000.00. He has refused to pay these dividends to Chapman who demands them.

Morrison's position is thus sought to be grounded: That the assignment of the Oyler claim to Craig placed the ownership of the Oyler deposit directly in Craig; that the assignment of Bennett to Deitz, trustee, placed the ownership of that deposit in Deitz, trustee, for the benefit of Craig; that liquidating dividends applicable to said deposits should be credited on the indebtedness of Craig to the bank, under the familiar rule that a liquidating bank may credit the deposit of a debtor against his debt.

In opposition to the position asserted by Morrison, receiver, Chapman urges that the assignments did not have the effect of transferring title and ownership of the deposits to Craig and Deitz, trustee, respectively; that these persons were mere intermediaries for the transfer of the Oyler and Bennett claims to Chapman as collateral security for the debt which Craig owed him; that the assignments stand in lieu of the conveyed-away portions of the 250 acres of the above mentioned tract of land, which acreage had in effect been mortgaged to Chapman as security for the Craig debt.

We are of opinion that the reasons relied on by Chapman are sound, that his position is therefore well-taken, and that the circuit court properly ruled in his favor against the assertion of Morrison, receiver.

There is no contention that the arrangement between Craig and Chapman as evidenced by the deed which passed from the former to the latter November 30, 1931, and their collateral agreement, was fraudulent or was

entered into from ulterior motives. That a deed absolute on its face may be held to be a mortgage is a familiar equity principle, which this court has applied in numerous cases. *Hursey* v. *Hursey*, 56 W. Va. 148, 49 S. E. 367, is typical. Therefore, under the deed of Craig to Chapman, the grantee was entitled to rely on 250 acres of the land as security for Craig's debt to him. As to said property this right of Chapman constituted a first lien.

When Chapman joined in the conveyances of portions of the 250-acre tract to Oyler and Bennett, respectively, he did not surrender his security, *pro tanto*, but merely agreed to a substitution of security, that is, that he would accept assignments of the Oyler and Bennett claims against the bank in lieu of the respective acreages granted to them. Craig was a mere instrument or conduit for the exchanging of real estate security for collateral security (choses in action) for the benefit of Chapman. Neither Craig nor Deitz, trustee, has or had any benefical interest in either of the assignments. It follows therefore that the proposal of Morrison, receiver, to apply against Craig's indebtedness the liquidating dividends arising from the deposits affected by said assignments, is not well founded. These dividends, to the extent of the unpaid balance of Chapman's debt, should be paid to him.

In respect of the matter herein determined, no other question was presented by the pleadings or considered by the court.

We affirm the chancellor's decree.

*Affirmed.*